276 F.2d 681
 J. Catherine MOYER, Golden A. Moyer, Jr., Florence G. Moyer,
Grace A. Share, formerly Grace A. Moyer, Robert J. Share,
Joseph D. Moyer, Anne S. Moyer, Dorothy M. Cunningham,
formerly Dorothy M. Moyer, William Cunningham, Jr., Herman
J. Moyer, Eleanor Moyer, William A. Moyer, M. La Vonne
Moyer, Robert G. Moyer, and Koral K. Moyer, Appellants,
v.
Barth P. WALKER, Trustee, Parker Petroleum Company, Inc., Appellee.
 No. 6235.
 United States Court of Appeals Tenth Circuit.
 March 17, 1960.
 
 Gordon F. Brown, Oklahoma City, Okl. (Paul Brown, Oklahoma City, Okl., was with him on the brief), for appellants.
 Francis S. Irvine, Oklahoma City, Okl. (Kerr, Conn & Davis, Oklahoma City, Okl., were with him on the brief), for appellee.
 Before HUXMAN, PICKETT and BREITENSTEIN, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Western District of Oklahoma, refusing to order the Trustee of the Parker Petroleum Company, Inc. to cancel and release an oil and gas lease on the real estate described therein.
 
 
 2
 On October 9, 1956, the Moyers gave an oil and gas lease to Vivian Stewart Neal on the Northwest Quarter and the Northwest Quarter of the Northeast Quarter of Section 29, Township 23 North, Range 24, West of the Indian Meridian, which was subsequently assigned to the Parker Petroleum Company, Inc. The lease provided that it should remain in force for two years and as long thereafter as oil and gas, etc. 'is or can be produced.' It contained the usual provisions for royalty payments and provided for shut-in payments for gas equal to the delay rental payments of the lease for such period of time as gas was not produced.
 
 
 3
 Paragraph 2 or the lease provided that the lease shall remain in force for a term of 'two (2) years and as long thereafter as oil * * * is or can be produced.'
 
 
 4
 Paragraph 5 of the lease provided that if no drilling operations were commenced before October 9, 1957, the lease should terminate unless lessees paid or tendered $200 as a rental for the privilege of deferring commencement of drilling operations for one year and that 'in like manner or upon like payments or tenders' drilling operations could be deferred for like periods.
 
 
 5
 Paragraph 13, so far as material, provided that if within the primary term production on the leased premises should cease for any cause, the lease would not terminate if drilling operations for a new well were commenced before the next ensuing rental payment date, or provided 'lessee begins or resumes the payment of rentals in the manner and amount hereinbefore provided.'
 
 
 6
 Paragraph 19 provided that, 'It is further agreed that if production is encountered no well or wells will be shut in for a period to exceed three years after date of completion.'
 
 
 7
 A well was begun in April, 1957, and was completed to the required depth in June, 1957. Upon completion of the well, a string of flow pipe tubing, separator, and two tanks were installed, and testing operations, including fracing, swabbing and other testing operations took place for about forty days. During this time about 324 barrels of new oil were produced and apparently marketed. Further operations on the lease were discontinued. In October, 1957, Parker removed the tanks and separator from the lease. Since then no equipment except the casing, tubing and well head has been on the lease. Moyer testified that no one had been on the lease since October 26, 1957, that being the date when the tanks and equipment were removed. There is no evidence which would support a finding that any effort was made to find a market for this oil from October, 1957, when the tanks were removed, to within a week or so of this trial. Romer, Parker's employee, testified that there was no intention to bring the equipment back after it was removed. Parker, in June, 1958, in the presence of the trustee,[1] stated that he was out of money and that if he had money he would not spend it on the Moyer well and that so far as he was concerned, it was a dry hole. Endicott, Parker's chief engineer, filed a log with the Corporation Commission on September 19, 1958, showing that the well was completed as a dry hole. Notice of intention to plug was signed by Endicott and filed with the Commission on September 19, 1958, with a notation that plugging operations were to be commenced October 1, 1958. Concerning the above outlined facts, there is no substantial dispute in the record.
 
 
 8
 While the court made reference to the provisions of Paragraph 2, it gave slight consideration thereto in reaching its conclusions. It based its judgment refusing cancellation on its conclusion that considering Paragraph 19, it could not 'rule that Parker Petroleum Co., Inc. has failed under the circumstances to exercise reasonable diligence in marketing the oil in question.' While not so specifically holding, the court evidently concluded that there was no abandonment because there was no breach of implied covenant to produce and market.
 
 
 9
 Abandonment may result without breach of the implied covenant to produce and market. This principle was recognized by the Oklahoma Supreme Court in Doss Oil Royalty Company v. Texas Company, 192 Okl. 359, 137 P.2d 934. While a lessee may not have breached the implied covenant to produce and market, it may, by its acts and conduct clearly show that it intended to, and, in fact, had abandoned the lease. (See Doss Oil Royalty Company, supra.) There is much in this record which shows rather forcefully that the lessee considered the well a dry hole, and not only intended to, but had, in fact, abandoned the lease, and that this condition continued until a few weeks before the institution of this action when the trustee took a different position which could well have been induced by the renewed interest which developed at that time in oil in the surrounding area. But since we do not rest our decision on abandonment, it is not necessary to fully develop this subject.
 
 
 10
 It is a cardinal rule of construction that written instruments must be so construed, if possible, as to give effect to all of the provisions thereof.[2] Paragraph 13 is as much a part of the contract as is Paragraph 15. The parties must have intended that it be given force and effect, otherwise it would not have been included. There is, in our view, no conflict between Paragraphs 13 and 15. By Paragraph 15, the lessors intended, no doubt, because of the absence of a market, to give lessee a greater period of time to find a market for the oil than is ordinarily considered reasonable when a market is readily available. But they did not intend thereby to relieve it from its obligations to drill other wells or to pay delay rentals to keep the lease in force while searching for an available market. Paragraph 13 makes it clear that the lease should end unless delay rentals, as provided for, were paid, or a new well was begun as set out in the paragraph.
 
 
 11
 We do not agree with appellee that the tender of delay rentals was excused because lessor's conduct made it clear that such tender would have been refused. It was lessee's duty to make tender of performance of the conditions of Paragraph 13 necessary to keep the lease in force. There is testimony that in June, 1958, in a conversation with Parker, Moyer called his attention to the fact that the primary term of the lease would expire in October, and that, 'We felt he had this obligation to drill three more wells.'[3] It was then that Parker stated, according to Moyer's testimony, that, 'We don't have any money to spend. If I did have any money to spend, I wouldn't spend it on the Moyer lease. As far as I am concerned, it's a dry hole.' There is nothing in the Moyer conversation indicating that tender of performance of either of the conditions of Paragraph 13, necessary to keep the lease in force after October, would have been refused. In fact, the conclusion to be drawn therefrom is to the contrary.
 
 
 12
 It is our conclusion that the lease terminated because of lessee's failure to fulfill the requirements of Paragraph 13 necessary to extend it beyond its primary term.
 
 
 13
 Reversed and remanded.
 
 
 
 [1]
 Parker Petroleum, Inc. was placed in receivership
 
 
 [2]
 12 Am.Jur., Contracts, Sec. 241
 In Hammett Oil Co. v. Gypsy Oil Co., 95 Okl. 235, 218 P. 501, 506, the Oklahoma Court said: 'The intention of the parties must be deduced from the entire agreement, not from any part or parts of it, and, where a contract has several stipulations, the intention of the contracting parties is not expressed by any single clause or stipulation, but by every part and provision in it, which must all be considered together, and so construed as to be consistent, with every other part.'
 
 
 [3]
 Three other similar leases on adjoining acreage had been executed