Timothy A. SMITH, Plaintiff,

v.

The BOARD OF COUNTY COMMISSIONERS OF the County of LYON and Clifford Hacker, Gary Eichorn, Sheriff, Defendants.

No. 01–4018–SAC.

United States District Court, D. Kansas.

July 16, 2002.

Laura L. Miser, Law Offices of Michael C. Helbert, Emporia, KS, for Plaintiff.

Jana V. Richards, Sanders, Conkright & Warren, LLP, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

CROW, District Senior Judge.

This is a case in which the plaintiff allegedly suffered injuries from having fallen in the kitchen of the Lyon County jail while an inmate there, and from his care and treatment thereafter. Plaintiff has brought various negligence and constitutional claims against the Board of County Commissioners of Lyon County, its former Sheriff, Clifford Hacker, and its current Sheriff, Gary Eichorn.

Two motions are before the court: plaintiff's motion for leave to file a second amended complaint, and defendants' "motion for summary judgment."[1]

Additionally, plaintiff has, by letter, requested oral argument of the motions. To the extent plaintiff's request for oral argument could somehow be construed as a motion, it is denied, as the court does not believe that oral argument would be of substantial assistance in resolving this matter.

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff has moved for permission to file a second amended complaint (Dk. 55) containing claims in addition to those asserted in his amended complaint.[2]

Two days after plaintiff's motion to file a second amended complaint was filed, the final pretrial order was filed. (Dk. 58). As the parties are well aware, the pretrial order, when approved by the court and filed with the clerk, together with any memorandum entered by the court at the conclusion of the final pretrial conference, will control the subsequent course of the action unless modified by consent of the parties and court, or by an order of the court to prevent manifest injustice.

D. Kan. R. 16.2(c). An order entered pursuant to Rule 16(e) supersedes the pleadings and controls the subsequent course of litigation. *Hullman v. Board of Trustees of Pratt Community College*, 950 F.2d 665, 668 (10th Cir.1991). The pretrial order in the present case would supercede plaintiff's second amended complaint and no purpose would be served by granting plaintiff's motion. Further, because the claims which plaintiff seeks to add in its second amended complaint are already included in the pretrial order, neither party will be prejudiced as a result of this ruling. This motion shall therefore be denied as moot.

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### Standard for summary judgment

More than a "disfavored procedural shortcut," summary judgment is an impor-

---

1. Defendant's motion seeks judgment on fewer than all claims, and is thus a motion for partial summary judgment.

2. For ease of reference, the court will refer to the additional claims as the "new claims."

tant procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Ins. Corp.,* 805 F.2d 342, 346 (10th Cir. 1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791(1987).

Under this standard, this court examines the record to determine whether any genuine issue of material fact is in dispute, construing the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Curtis v. Oklahoma City Pub. Schs. Bd. of Educ.,* 147 F.3d 1200, 1214 (10th Cir.1998). When the nonmovant will bear the burden of proof at trial, he can survive summary judgment only by going beyond the pleadings and presenting evidence sufficient to establish the existence, as a triable issue, of any essential and contested element of his case. *See McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir.1998).

**Facts**

The factual posture of this case is unusual in that defendants chose to set forth in their memorandum only a few uncontroverted facts, and did not challenge even in part any of the 61 uncontroverted facts set forth by plaintiff in its response. The following facts, viewed in the light most favorable to the plaintiff, are thus uncontested.

1. The Board of County Commissioners of the County of Lyon is the owner and operator of the Lyon County jail in Emporia, Kansas.

2. On or about April 16, 1999, plaintiff, who was placed in custody of the Lyon County jail several weeks earlier, was made a trustee. Trustee duties for plaintiff included kitchen and laundry duties such as delivering meals to inmates, returning dishes to the kitchen, washing pots and pans, mopping the floor and keeping the kitchen in a reasonably clean and safe condition.

3. In April of 1999 and until January, 2001, Clifford Hacker was the sheriff and administrator for the Lyon County jail.

4. Gary Eichorn is the current sheriff of Lyon County, having assumed office in January, 2001. He did not hold any positions in an official capacity for the Lyon County jail at the time of this alleged incident in May–August, 1999.

5. Plaintiff alleges that he fell while in the kitchen and sustained injuries therefrom. The date of plaintiff's fall is disputed. According to the record, plaintiff's fall is said to have occurred on May 2, 1999 (Dr. Curtis depo. p. 28–29); on May 3, 1999 (Dk. 57, p. 2); in the last part of May (plaintiff's depo. p. 90–92); sometime in April (plaintiff's depo. p. 88–89); on June 2, 1999 (Exh. K—accident form); and sometime in the week preceding June 3d or June 5th (nurse's note bearing illegible date).

6. One morning, jail guard Tim Winterringer noticed plaintiff limping when he was delivering breakfast at the jail facility. When he questioned plaintiff about his condition, plaintiff stated that he had fallen in the kitchen about a week ago. Guard Winterringer immediately took plaintiff to the medical room for evaluation.

7. This was the first notice guard Winterringer had from plaintiff of any back problems or injury.

8. On that same day, plaintiff was seen by the nurses who evaluate and treat pa-

tients 2–3 days a week at the Lyon County jail. He was also given an ice pack and two Ibuprofen by the jail staff.

9. The Nursing Assessment Note is dated either 6/3/99 or 6/5/99, in handwriting which is illegible as to the date. That note reports that plaintiff complained of "back pain." It also states: ". . . injured at work previously Nov. 1998. Slipped here last week pain returned and has worsened . . ." Based upon her evaluation, the nurse recommended plaintiff be seen by a doctor.

10. On that same day, plaintiff was taken to see Dr. Wright, a physician who contracted to provide medical services for the jail, for evaluation of plaintiff's back pain.

11. From June 5 through July 22, 1999, plaintiff was evaluated by a physician on four occasions to treat a back problem.

12. On or about July 23, 1999, Plaintiff underwent surgery at Newman Memorial Hospital for back problems.

Plaintiff's undisputed facts, unchallenged by the defendant, follow.

13. Timothy Smith fell in the kitchen in Lyon County on or about May 3, 1999.

14. He told Tim Winterringer the next day that he needed to see a doctor, that something was wrong.

15. Mr. Winterringer told plaintiff that he would have to make a doctor's appointment.

16. Plaintiff told Mr. Winterringer every day that it was getting worse and worse and he needed to see a doctor.

17. Plaintiff suffered from incontinence after the fall.

18. After seeing Dr. Wright, plaintiff was not always provided new bedding after making complaints about needing new bedding and clothes.

19. Prior to seeing the doctor, plaintiff either retrieved the bedding himself or was helped by another inmate.

20. A nursing note indicates plaintiff saw a nurse at the jail on June 3, 1999.

21. Plaintiff currently experiences incontinence in the form of not being able to empty his bladder and not being able to control his bowels.

22. He currently suffers from impotence.

23. Plaintiff will have to take Flomax for the rest of his life to help regulate his incontinence.

24. Jailer Tim Winterringer did not go through orientation as a new hire by the Lyon County Jail.

25. Mr. Winterringer did not receive any training pertaining to the medical needs of inmates except for information contained in the policy and procedure manual.

26. For medical events which the jail staff could not handle, they would call an EMT.

27. Mr. Winterringer was never a medical officer, yet dispensed medication from time to time.

28. Mr. Winterringer picked the plaintiff to be a trustee because he was a model inmate.

29. Medical officer Darcy Garriot has a high school diploma but did not receive a college degree.

30. Prior to working at the Lyon County jail, she worked at Wal–Mart and Midwest Gymnastics.

31. At the time of orientation she did not receive much medical training.

32. Prior to becoming the medical officer, Ms. Garriot underwent medical training only for CPR and first aid.

33. The Emergency Medical Technicians were used as first responder when a jailer felt it necessary, as they were located directly across the street.

34. The jail log kept by the facility will not reflect every medical event an inmate has.

35. The training manual for new hires at the Lyon County jail is just a basic book to show them the different forms for the medical field so that they get a general idea of what different things look like.

36. The Lyon County Detention Center Policy and Procedures Manual did not contain any procedures or guidelines for handling medical issues that arise with inmates.

37. Lyon County Jail has no written procedures at all to provide to jailers and medical personnel in regards to medical requests or medical issues with inmates.

38. Lyon County Jail does not have a licensed health care professional present every day.

39. New hires are not given medical training other than CPR and first aid.

40. Sheriff Hacker was the sheriff of Lyon County for 16 years; 1985–2001.

41. The budget for the jail is drafted by Sheriff Hacker and approved by the Board of Commissioners Lyon County.

42. The budget included needs for inmate medical care.

43. Sheriff Hacker obtained training to operate the jail facility through the American Corrections Association (ACA) and the American Jail Association (AJA).

44. The ACA and AJA are recognized as authorities in the field of corrections.

45. Lyon County Jail received publications from these associations that included standards of care for adult detention centers.

46. ACA regulations require a written policy and procedure to ensure inmates' health complaints are solicited daily and acted on by health-trained correctional personnel.

47. ACA regulations require that when a facility does not have a full time qualified health personnel, a health trained staff member coordinates the health care delivery in the facility under the joint supervision of the responsible health authority and the facility administrator.

48. ACA regulations require that written policy, procedure and practice provide for the proper management of pharmaceuticals and address the following subjects: administration of medication by persons properly trained and under the supervision of the health authority and facility administrator or designee.

49. ACA regulations require that written policy, procedure and practice provide that correctional and other personnel are trained to respond to health-related situations within a four-minute response time.

50. ACA requires a written policy and procedure requiring that the facility provide 24 hour emergency medical and dental care available as outlined in a written plan that includes provisions for specific arrangements

51. Lyon County Jail is not in compliance with the ACA standards above.

52. Sheriff Hacker did not feel it necessary to become familiar with these ACA standards and did not require jail supervisors to become familiar with them.

53. Lyon County jail could house 140 inmates.

54. The jail does not employ a certified or trained medical professional, doctor or nurse.

55. Sheriff Hacker never checked on the cost of training for paramedics, CNAs

or CMAs even though he was aware it was available at the local vocational technical college.

56. He never checked to see which jail employees had training manuals or who had read them.

57. The Board of County commissioners never inquired as to whether the jail was in compliance with ACA. standards.

58. There was no weekly or daily reporting required from the jail supervisors to the sheriff.

59. Dr. Curtis' speciality is physical medicine and rehabilitation with a subspeciality certification in spinal cord injury.

60. Dr. Curtis spent two and half hours examining plaintiff.

61. Dr. Curtis diagnosed plaintiff as having a disc herniation at L4–L5 which compromised the blood flow to the spinal cord.

62. The interruption of the blood flow caused injury to the spinal cord at T–10.

63. Symptoms of a T–10 injury includes-paraparesis, weakness and sensory loss.

64. Plaintiff developed damage to his blood supply in the distal area and the cauda equina because of delay in medical treatment.

65. Plaintiff's symptoms of numbness in perinial area and incontinence were "alarming" to Dr. Curtis.

66. Ischemia, which is lack of blood to neuro tissue, requires 24 hour response time, not days or weeks.

67. It is unrebutted by competent medical testimony that delay in emergency medical treatment caused Plaintiff to have a permanent spinal cord injury.

## Analysis

Defendants' motion for summary judgment raises both procedural and substantive issues.

## I. Procedural Issue—Untimeliness

The court first addresses defendants' procedural claim. Defendants contend that some of plaintiff's claims are untimely because they were not asserted until months after the deadline for amending pleadings, as established in the scheduling order. These new claims are set forth in the pretrial order, and are the same as those plaintiff sought to add in its second amended complaint.

The procedural posture of this case has changed substantially since defendants filed this motion, making a short chronology of the posture of this case relevant. On November 8, 2001, Magistrate Judge Bostwick held a pretrial conference. The court is unaware of the substance of the discussion held at that time except as reflected in the docket sheet, which reflects a dispute about expert witnesses and an extension of time for filing dispositive motions.

On December 17, 2001, defendants filed their motion for summary judgment, which the court is now addressing. On January 22, 2002, plaintiff responded to defendants' motion for summary judgment, and on that same date filed its motion requesting leave to file its second amended complaint, which the court has addressed above. Two days later, the final pretrial order was filed. Thereafter, defendants responded to plaintiff's motion for leave to file its second amended complaint, and replied to plaintiff's response to its motion for summary judgment. Although filed at least five days after the pretrial order was filed, neither defendant's response nor its reply reflects the controlling nature of the pre-

trial order, although reference to the pretrial order is made.

Defendants contend that plaintiff has failed to show good cause as required by Fed.R.Civ.P. 16(b) for modification of a scheduling order (which established a July 18, 2001 deadline for amending pleadings), and that they will be prejudiced by the untimely amendment, if permitted, because "they were not given adequate notice of such theories in order to prepare a proper defense." (Dk. 51, p. 6). Defendants claim they will need different witnesses, exhibits, and experts, and thus more discovery, should the new claims be allowed.

■ Given the current posture of the case, defendants' contention that plaintiffs have the burden to show good cause for modification of the scheduling order is misplaced. The scheduling order, like the amended complaint, is rendered moot by the filing of the final pretrial order.

" 'The office [of the pretrial order] as a procedural tool [is] to insure the economical and efficient trial of every case on its merits without chance or surprise.' " *Smith v. Ford Motor Co.,* 626 F.2d 784, 795 (10th Cir.1980) (quoting *Case v. Abrams,* 352 F.2d 193, 195 (10th Cir.1965)), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981). " 'A policy of too-easy modification [of pretrial orders] not only encourages carelessness in the preparation and approval of the initial order, but unduly discounts it as the governing pattern of the trial.' " *Perry v. Winspur,* 782 F.2d 893, 896 (10th Cir.1986) (quoting Honorable A. Sherman Christenson, *The Pretrial Order,* 29 F.R.D. 362, 371 (1961)).

■ Once the triable issues have been settled in the pretrial order, the court may reject efforts to modify existing ones unless necessary to prevent manifest injustice. *Century Refining Co. v. Hall,* 316 F.2d 15, 19 (10th Cir.1963). *See* Fed. R.Civ.P. 16(e) ("The order following a final pretrial conference shall be modified only to prevent manifest injustice."). Furthermore, the burden of demonstrating manifest injustice falls upon the party moving for modification. *See R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.,* 835 F.2d 1306, 1308 (10th Cir.1987). Because the claims which give rise to defendants' motion are expressly included in the pretrial order, the burden to show that manifest injustice will result if such claims are not stricken falls upon defendants.

The new claims were not included in the pretrial order by inadvertence. The pretrial order specifically refers to these claims, in stating that "defendants will file a motion to strike any claims by plaintiff for inadequate training or inadequate conditions of confinement." (Dk. 58, p. 11). This language shows defendants' awareness of plaintiff's new claims during the process of drafting the pretrial order, and reflects defendants' intent to permit inclusion of those claims in the pretrial order and to preserve its right to address them later by means of a motion to strike. The pretrial order thus reflects that the intention of the magistrate judge and of the parties was to include these claims in the pretrial order. *Compare Nelson v. Textron, Inc.,* 142 F.R.D. 682, 683 (D.Kan. 1992) (modifiying pretrial order because it did not conform to the intention of the magistrate judge.)

■ Defendants had every opportunity to voice at the pretrial conference the substantive basis for their objections to plaintiff's new claims, and to receive a ruling thereon from the magistrate judge prior to their submission of the final pretrial order. The magistrate judge had supervised discovery, had the power to extend discovery beyond the date of the pretrial conference, and was best suited to rule upon the issue

presented. For defendants to knowingly elect not to object to plaintiff's insertion of these new claims at the time of the pretrial conference and to receive a ruling thereon from the magistrate judge, but instead to present the matter to this court as part of defendants' motion for summary judgment is improper procedure, and precludes the relief sought by defendants here. *See Maisch v. Hunt Midwest Mining, Inc.,* 1997 WL 94234 at *8 (D.Kan.1997) ("finding relief of striking a claim included in pretrial order 'precluded' where defendant's failure to raise issue prior to or during pretrial conference was "inexcusable").

■ Although defendants make no attempt to demonstrate that modification of the pretrial order is necessary to prevent "manifest injustice," defendants state that they would be unfairly prejudiced by permitting plaintiff to assert these theories because they were not given adequate notice of such theories and would need additional discovery. (Dk. 51, p. 6). Defendants fail to comprehend that such theories are already asserted in the controlling document, thus no issue of adding such theories is before the court. Because defendants' general assertion of prejudice is insufficient to establish manifest injustice, no modification of the pretrial order will be made.

Ordinarily, the interests of both parties would best be met by reopening discovery for the limited purpose of permitting defendants to prepare for trial on the new claims set forth in the pretrial order. However, for the reasons that follow, no such discovery will be necessary.

## II. Substantive Issues

Defendants next seek summary judgment on the merits of some of the claims set forth in the pretrial order.

### A. Sheriff Eichorn

Defendant Gary Eichorn seeks summary judgment because he was not the sheriff administering the Lyon County jail at the relevant time. It is undisputed that Sheriff Eichorn is the current sheriff of Lyon County, that he took office in January of 2001, and that he did not hold any position for the Lyon County jail at the time of the events giving rise to this lawsuit.

■ Plaintiff fails to respond to this issue. *See* Dk. 57. The pretrial order does not make any allegations of Sheriff Eichorn's personal involvement in any of the events giving rise to this suit. As to plaintiff's negligence claims, if any, against this defendant, plaintiff has not alleged this defendant owed him some duty recognized under law. To recover for negligence under Kansas law, the plaintiff must prove the existence of a duty, among other elements. *Nero v. Kansas State University,* 253 Kan. 567, Syl. ¶ 1, 861 P.2d 768 (1993). Because Sheriff Eichorn was not employed as Sheriff at the time the events giving rise to this lawsuit occurred, and no other relationship giving rise to a duty between this person and the plaintiff has been alleged, no basis for plaintiff's negligence claims against him has been shown.

■ Regarding plaintiff's claims pursuant to 42 U.S.C. § 1983, this defendant has been sued only in his official capacity. Dismissal of these claims against Sheriff Eichorn is warranted as a matter of judicial economy and efficiency. The Supreme Court has held that a suit against an individual in his official capacity is really "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611

(1978)). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. *See Sims v. Unified Government of Wyandotte County/Kansas City, Kansas,* 120 F.Supp.2d 938, 944 (D.Kan.2000). This court has previously applied this rationale to dismiss official capacity claims against individuals in suits in which a Board of County Commissioners is a party, *see Gallardo v. Board of County Com'rs,* 67 Fair Empl. Prac. Cas. 615, 1995 WL 106366, *2 (D.Kan.1995); *see also Burns v. Board of Com'rs of County of Jackson, Kansas,* 197 F.Supp.2d 1278 (D.Kan.2002), and shall do the same here. Accordingly, plaintiff's redundant claim against Sheriff Eichorn shall be dismissed.

## B. Sheriff Hacker

Defendant next seeks summary judgment on all claims against Sheriff Hacker, who was the sheriff and administrator for the Lyon County jail during the time of the events giving rise to this lawsuit.

### 1. Official capacity claims

Plaintiff contends that granting summary judgment to Sheriff Hacker in his official capacity "essentially ends the case against the county as well." (Dk. 57, 15th unnumbered page.) This statement demonstrates a profound lack of understanding as to the relevant law. "*Monell* does not require that a jury find an individual defendant liable before it can find a local governmental body liable." *Garcia v. Salt Lake County,* 768 F.2d 303, 310 (10th Cir. 1985).

■■ The court dismisses the constitutional claims against Sheriff Hacker in his official capacity for the same reasons set forth above regarding Sheriff Eichorn. Because summary judgment on the official capacity claims is not based upon any resolution of the facts of the case, but solely upon Sheriff Hacker's position in relation to the Board of County Commissioners, this ruling will have no preclusive effect on plaintiff's claims against the county.

### 2. Individual capacity claims

Negligence

■■ The parties have not clarified whether Sheriff Hacker is alleged to be liable for negligence. The pretrial order makes no reference to Sheriff Hacker, (other than in its caption) either by name, by position, by description, or otherwise except to allege that "defendants" did or failed to do certain acts, none of which necessarily implicate Sheriff Hacker.[3] Because the pretrial order fails to state a claim against Sheriff Hacker for negligence, and does not indicate that he had any personal involvement in the events giving rise to this suit other than occupying the position of sheriff at the relevant time, plaintiff's negligence claims, if any, against him shall be dismissed.

8th Amendment

■■ To be held liable for a § 1983 violation, a prison official must have been personally and directly responsible for the alleged Eighth Amendment violation. *See Grimsley v. MacKay,* 93 F.3d 676, 679 (10th Cir.1996). A supervisor may not be held liable unless an affirmative link exists

---

**3.** The court's burden in deciding this motion has been substantially increased by deficient theories of recovery set forth in the pretrial order. They state solely: "Plaintiff asserts that he/she/it is entitled to recover upon the theory that: A. Negligence. B. 8th Amendment of the Constitution. C. 14th Amendment of the Constitution. D. 42 U.S.C. § 's 1983 and 1988." (Dk. 58, p. 6.)

between the constitutional violation and either the supervisor's personal participation or his failure to supervise. *See id.; Green v. Branson,* 108 F.3d 1296, 1304 (10th Cir.1997); *Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir.1993); *Meade v. Grubbs,* 841 F.2d 1512, 1527 (10th Cir.1988). Plaintiff has not shown any affirmative link between Sheriff Hacker's personal participation or his failure to supervise, and the constitutional violations allegedly suffered by plaintiff.

 Supervisor status alone is insufficient to support liability. *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996). A supervisor may be held liable when there is a complete failure to train subordinates or training that is so reckless or grossly negligent that future misconduct is almost inevitable. *See Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir. 1988). Additionally, a supervisor may be liable when he knew or should have known of subordinates' misconduct and failed to prevent future harm. *Anthony v. Baker,* 767 F.2d 657, 666 (10th Cir.1985). But plaintiff has not shown any of the above. Plaintiff's general allegation of supervisory neglect fails to rise to the level of deliberate indifference, and is unsupported by specific facts. Because plaintiff brings no sufficiently particularized allegations of constitutional violation against defendant Eichorn such that he might be held personally liable, summary judgment on plaintiff's § 1983 claims against him is warranted.

## C. Eighth Amendment Claims against the Board

 The Eighth Amendment states that the federal government shall not inflict cruel and unusual punishments. A prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs—if he knows of and disregards an excessive risk to inmate health or safety. *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir.2000).

As recently stated by the Tenth Circuit:

To demonstrate a violation, an inmate must satisfy both objective and subjective elements. "The objective component is met if the deprivation is sufficiently serious." *Sealock,* 218 F.3d at 1209 (quotation omitted). "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention.'" *Oxendine v. Kaplan,* 241 F.3d 1272, 1276 (10th Cir.2001) (quoting *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir.1999)); *see Sealock,* 218 F.3d at 1209. The subjective component—deliberate indifference—is met if the prison official both was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. at 837, 114 S.Ct. 1970, 128 L.Ed.2d 811.

*Garrett v. Stratman,* 254 F.3d 946, 949–50 (10th Cir.2001).

Defendants seek summary judgment on plaintiff's claims under the eighth amendment for delay in medical treatment, failure to provide clean bedding and clothing, failure to supervise and failure to train.

**Delay in medical treatment**

 A delay in providing medical treatment is not actionable unless it is occasioned by "deliberate indifference which results in substantial harm." *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir.1993); *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir.1999) (quoting *Farmer* 511 U.S. at 847,

114 S.Ct. 1970). The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain. *Oxendine,* 241 F.3d at 1278.

▮ Plaintiff alleges, and defendants dispute, that plaintiff had a serious medical need, and defendants deliberately disregarded plaintiff's medical needs and/or conditions of confinement. (Dk. 57). This generic assertion is far from a specific, non-conclusory allegation of fact necessary to enable the court to resolve the summary judgment motion. The pretrial order is somewhat more specific in alleging that defendants "failed to provide medical care for plaintiff in a timely manner." (Dk. 58, p. 5). It is not clear, however, whether this claim is based upon the alleged delay between the date that plaintiff fell in the kitchen and the date he first saw a physician, or upon the delay between his fall and his surgery, or upon some other facts.

Defendants contend that plaintiff saw a nurse and a physician on the same day that a jailer first noticed or had reason to notice that plaintiff was injured, and that these visits occurred within a week of plaintiff's fall, so that plaintiff's claims are baseless. But the record, viewed in the light most favorable to plaintiff, could be read to show that plaintiff fell on May 3rd, 1999, complained to a jailer the following day and every day thereafter that he was injured and needed to see a doctor, but received no medical care or treatment until he saw a nurse and physician on June 3rd or 5th. Plaintiff's unrefuted facts that he complained to Tim Winterring of his injury and his need for medical attention and that such complaints were ignored are sufficient to raise a question of fact regarding deliberate indifference by Winterring.

Plaintiff's burden to demonstrate that any alleged delay resulted in substantial harm is met by the following uncontradicted facts: 1) that plaintiff developed damage to his blood supply in the distal area and the cauda equina because of delay in medical treatment; 2) that the interruption of the blood flow caused injury to plaintiff's spinal cord at T–10; and that the "delay in emergency medical treatment caused [plaintiff] to have a permanent spinal cord injury." Plaintiff has thus alleged the deprivation of an actual constitutional right as to his claim of delay in medical treatment.

Because the record reveals a genuine issue of material fact as to when plaintiff fell and when defendants first learned of plaintiff's injury, the court denies summary judgment on this claim as to defendant the Board of County Commissioners.

## Clean bedding and clothing

Regarding plaintiff's claim of inadequate conditions of confinement, the pretrial order alleges that "defendants failed to provide plaintiff with clean bedding and clothing upon request when his became soiled." (Dk. 58, p. 4). The record contains plaintiff's testimony that at some unspecified point after he saw Dr. Wright and before he saw Dr. Montgomery, he needed new sheets and clothes on a daily basis because he had become incontinent. (Dk. 57, Smith depo., p. 83–85). Plaintiff stated he would complain to the officer on duty, and that the officer would either go get some for him or have someone else do so, but that on four or five occasions, "they" did not get him new bedding when he requested it.(*Id.*) Defendants allege that another inmate provided clean items to plaintiff on occasion.

No other relevant testimony or evidence has been presented. The court has no knowledge of how many days plaintiff was incontinent during the six week period between his visits to Dr. Wright and Dr. Montgomery, of how many hours, if any, plaintiff remained in soiled bedding and/or

clothing, of any medical condition worsened due to defendant's alleged failure to provide clean bedding and/or clothing, or of any humiliation or indignity caused thereby. The record merely establishes that on several occasions, when plaintiff asked the jailer for clean items, he did not receive it from "them." Defendant alleges plaintiff received the clean items he requested from another inmate.

 "Under the Eighth Amendment, jail officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001).

 Plaintiff has failed to show sufficient evidence that defendants' delays on four or five occasions in providing clean clothing or bedding to plaintiff were so grave as to support an Eighth Amendment claim. *See Miller v. Michigan Dept. of Corrections Health Care Providers*, 986 F.Supp. 1078 (W.D.Mich.1997) (granting summary judgment, finding no Eight Amendment violation where prisoner suffered the indignity and discomfort of wearing urine and/or feces-soiled clothing for several hours at a time on each of three successive days); *compare Parrish v. Johnson*, 800 F.2d 600, 611 (6th Cir.1986) (finding Eighth Amendment violation where two paraplegic prisoners with diminished bladder and bowel control and with little or no ability to clean themselves were "regularly" or "routinely" left sitting in their own feces for significant periods of time, causing risk of infection, and were sporadically subjected to assaults and verbal degradation by a corrections officer). No § 1983 action can be brought unless the plaintiff has suffered physical injury in addition to mental and emotional harms.

42 U.S.C. § 1997e(e); *see also Perkins v. Kansas Dep't of Corrections.*, 165 F.3d 803, 807 (10th Cir.1999). Summary judgment on this claim is thus warranted.

**Failure to supervise**

 Plaintiff alleges that defendants failed to "supervise jail staff to ensure compliance with procedures." (Dk. 58, p. 2). Plaintiff fails to show the court which jail staff allegedly deviated from procedures, which procedures were allegedly violated, the manner in which such deviation occurred, or any harm suffered by plaintiff as a result of such deviation. Although plaintiff shows the court that the jail did not follow certain national standards, plaintiff has failed to show that the jail had any duty to follow those national standards. In short, plaintiff's allegation is far too generic to support an eighth amendment claim. Summary judgment on this claim is thus warranted.

**Failure to train**

Plaintiff contends that defendants' failure to provide any type of medical training to the jail staff violates the eighth amendment.

 Allegations of a policy of "failure to adequately train" may serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference." *Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The claimant must satisfy a high standard in establishing deliberate indifference.

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policy makers. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Only

where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a policy as defined by our prior cases—can a city be held liable for such a failure under § 1983.

*Canton,* 489 U.S. at 389, 109 S.Ct. 1197.

The U.S. Supreme Court has indicated that the issue in a case alleging failure to adequately train is whether a training program is adequate, and if it is not, then the question becomes "whether such inadequate training can justifiably be said to represent 'city policy'." *Id.* at 390, 109 S.Ct. 1197. A failure to provide proper training may fairly be said to represent policy for which the county is responsible, where:

> [i]n light of the duties assigned to specific ... employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.*

■ The State has a constitutional obligation "to provide medical care for those whom it is punishing by incarceration," *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), which "necessarily requires that the State 'make available to inmates a level of medical care which is reasonably designed to meet the routine and emergency health care needs of inmates.' *Battle v. Anderson,* 376 F.Supp. 402, 424 (E.D.Okla.)." *Ramos v. Lamm,* 639 F.2d 559, 574 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). As stated in *Ramos,* "deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical per-

sonnel capable of evaluating the need for treatment." *Id.* at 575.

However, courts "afford[ ] considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979) (stating that courts will " 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.' ") (citations omitted). Where the prison is providing an adequate level of medical care by its own chosen means, the court should not impose its own notion of "enlightened," preferred medical policy. *See Hassine v. Jeffes,* 846 F.2d 169, 175 (3d Cir.1988).

■ The evidence, viewed in the light most favorable to plaintiff, falls far short of demonstrating such systemic and gross deficiencies in training that plaintiff is effectively denied access to adequate medical care. *Compare Ramos,* 639 F.2d at 575. The Lyon County jail has chosen to provide medical care by means of referral to medical providers who are not on staff at the jail, but who have not been shown to be either unavailable or incompetent. The law does not require that jailers be trained to be medical care providers, and plaintiff has not shown that the lack of medical training to jailers effectively deprived plaintiff of access to competent medical care providers, or otherwise evidences a policy of deliberate indifference to plaintiff's health care needs. Summary judgment on this claim is thus warranted.

**D. National Standards of Care**

Defendants allege that plaintiff's new claim that defendants failed to comply with national standards of care for inmates in adult correctional facilities fails to state a claim upon which relief can be granted.

This motion is apparently brought pursuant to Fed.R.Civ.P.12(b)(6). Essentially, defendants contend that the minimum legal standards for the operation of county jails are established by Kansas law, rather than by national standards.

Plaintiff has responded that it has not made any separate claim based upon defendants' failure to comply with national standards of care, and that any evidence of non-compliance with national standards of care is merely "an allegation for the jury to consider when determining if actions taken by Sheriff Hacker ... were reasonable." (Dk. 57, 11th unnumbered page). Accordingly, this motion will be denied as moot, and the court will not address at this time the admissibility of evidence regarding national standards of care.

### E. Respondeat Superior Liability

■ Defendants next seek summary judgment on the basis that there is no respondeat superior liability for a 42 U.S.C. § 1983 claim, citing *Monnell*. Because § 1983 does not recognize the theory of respondeat superior as a basis for liability, in order to succeed on a claim under § 1983, a plaintiff must allege that he or she suffered injuries of a constitutional magnitude as the result of an official policy, custom, or practice. *Id.*

Plaintiff responds that he has not alleged any respondeat superior liability, but rather direct liability because the deprivation was the result of the board's "custom or policy." *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Accordingly, summary judgment on this issue will be denied as moot.

### F. Qualified Immunity

Defendants assert the defense of qualified immunity. Because the court has granted summary judgment to defendants

Eichorn and Hacker, the court need not reach this issue.

### G. Exhaustion of Administrative Remedies

Remaining for trial are plaintiff's claims against the Board of County Commissioners of Lyon County for negligence and under the 8th amendment for inadequate medical care and treatment. Although many issues remain regarding these claims, defendant has not raised them, and the court will note only one.

■ Pursuant to the Prison Litigation Reform Act of 1995, prisoners bringing § 1983 claims must exhaust available administrative remedies before proceeding in federal court. 42 U.S.C. § 1997e(a) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any ... prison ... until such administrative remedies as are available are exhausted." This provision requires full exhaustion of the available formal grievance procedure, regardless of the nature of the relief being sought. *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (exhaustion requirements of section 1997e apply to suits seeking monetary damages that are not administratively available). The exhaustion requirement applies to claims of denial of necessary medical care. *See Farrell v. Addison*, 34 Fed. Appx. 650, 2002 WL 568191 (10th Cir.2002) (Table).

The pretrial order does not reflect that plaintiff has exhausted his administrative remedies. The court therefore orders the plaintiff to show cause on or before August 2, 2002, why plaintiff's § 1983 claims should not be dismissed for failure to exhaust administrative remedies. IT IS THEREFORE ORDERED that plaintiff's motion for leave to file second amended complaint (Dk. 55) is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Dk. 51) is granted in part and denied in part, in accordance with the terms of this memorandum, and that defendants Hacker and Eichorn are hereby dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff shall show cause on or before August 2, 2002, why plaintiff's § 1983 claims should not be dismissed for failure to exhaust administrative remedies.