403 F.2d 2
 LUMBERMENS MUTUAL CASUALTY COMPANY, Appellant,
v.
Paul E. RHODES and Harry W. Edmondson, Appellees.
Paul E. RHODES, Administrator of the estate of Harry W. Edmondson, Appellant,
v.
Paul E. RHODES and Lumbermen Mutual, Appellees.
Paul E. RHODES, Appellant,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY, Appellee.
LUMBERMENS MUTUAL CASUALTY COMPANY, Cross-Appellant,
v.
Paul E. RHODES, Cross-Appellee.
 No. 8379.
 No. 8562.
 No. 9091.
 No. 10002.
 United States Court of Appeals Tenth Circuit.
 October 22, 1968.
 Rehearings Denied in Nos. 8562 and 9091 December 26, 1968.
 Certiorari Denied April 7, 1969.
 
 See 89 S.Ct. 1319.
 Paul E. Rhodes, pro se.
 John R. Baylor, Lincoln, Neb. (Robert R. Gibson, Lincoln, Neb., with him on the briefs) for Lumbermens Mutual Casualty Co.
 Before MURRAH, Chief Judge, PHILLIPS, and HILL, Circuit Judges.
 MURRAH, Chief Judge.
 
 
 1
 The validity of numerous rulings made by the trial court during protracted litigation concerning the asserted violation of the federal civil rights of one Paul E. Rhodes is presented here for our review. Since four correlative appeals are involved — Nos. 8379, 8562, 9091, and 10,002 — a short statement of the relevant facts should prove helpful in bringing the various issues presented into proper focus.
 
 
 2
 The circumstances giving rise to this litigation originated in 1960 in a Nebraska state district court, when Rhodes was convicted in absentia of contempt of court and sentenced to nine months imprisonment in the state penitentiary. Upon completing the sentence, Rhodes brought a series of lawsuits in the federal district court of Nebraska against various Nebraska judges, prosecuting attorneys, clerks of court, law enforcement officers and prison officials, and their respective bonding companies, who, Rhodes alleged, had deprived him of his civil rights in violation of 42 U.S.C. §§ 1983 and 1985.[1] In all such actions the defendants were found to be conclusively immune from suit. See Rhodes v. Houston, D.C., 202 F.Supp. 624, aff'd per curiam 8 Cir., 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719; Rhodes v. Meyer et al., D.C., 225 F.Supp. 80, aff'd 8 Cir., 334 F.2d 709, cert. den. 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186; Rhodes v. Van Steenberg, D.C., 225 F.Supp. 113, aff'd 8 Cir., 334 F.2d 709, cert. den. 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186; Rhodes v. Jones, 8 Cir., 351 F.2d 884, cert. den. 383 U.S. 919, 86 S.Ct. 914, 15 L.Ed.2d 673, reh. den. 383 U.S. 963, 86 S.Ct. 1229, 16 L.Ed.2d 306.
 
 
 3
 After his unsuccessful litigation in the Nebraska courts, Rhodes moved to other forums. In 1963, he filed a suit in the federal district court of Kansas against one Harry W. Edmondson, a guard employed at the Nebraska penitentiary during Rhodes' confinement. The complaint alleged, in effect, that Edmondson, with knowledge of Rhodes' wrongful incarceration, "aided and assisted" in his imprisonment "at the specific direction of" the warden and the state Attorney General, thereby depriving Rhodes of his civil rights. Edmondson defaulted, the case was submitted to the jury for the assessment of damages, and a verdict of $450,000 was returned for Rhodes. Several months after the entry of judgment, Lumbermens Mutual Casualty Company, the alleged surety under a Nebraska "Public Employees Blanket Bond", moved to intervene. No. 8379, one of the appeals presently before us, is from the trial court's denial of intervention.
 
 
 4
 In 1964, Rhodes sued Lumbermens in the federal district court in Kansas on the judgment obtained against Edmondson. Edmondson was allowed to intervene in the action, and filed an answer in which he admitted violating the federal civil rights of Rhodes at the specific direction of the Nebraska Attorney General and other state officials, and prayed that Lumbermens be required to pay the judgment entered against him. He also filed a "cross-complaint" against Lumbermens in which he sought actual and punitive damages in the amount of $100,000,000. The trial judge rendered summary judgment for Lumbermens on the cross-claim, and our No. 8562 constitutes the intervenor's appeal from that ruling.[2]
 
 
 5
 Rhodes' suit against Lumbermens on the Edmondson judgment resulted in a jury verdict for Lumbermens. In our No. 9091, Rhodes appeals from the judgment, claiming numerous errors which we shall treat in due course. Lumbermens also objects to several of the trial court's rulings in its cross-appeal designated as No. 10,002. Lumbermens concedes, however, that if in No. 9091 this court affirms the judgment rendered for Lumbermens, the cross-appeal becomes moot.
 
 
 6
 It seem chronologically appropriate to initially turn our attentions to No. 8379 — Lumbermens appeal from the denial of its motion to intervene in Rhodes' action against Edmondson. Lumbermens argues, as it must, that the trial judge abused his discretion in ruling that the application was not "timely".
 
 
 7
 Before intervention under Rule 24, F.R.Civ.P., either as a matter of right or permissively, there must be a "timely application". See Janousek v. Wells, 8th Cir., 303 F.2d 118; Tesseyman v. Fisher, 9th Cir., 231 F.2d 583; Kaplan v. Guardian Life Insurance Co. of America, D.C., 231 F.Supp. 874. And since the rule is silent as to what constitutes a timely application, the question must be answered in each case by the exercise of the sound discretion of the trial court. See Simms v. Andrews, 10th Cir., 118 F.2d 803; Washington Gas Light Co. v. Baker, 90 U.S.App.D.C. 98, 195 F.2d 29. The record indicates that the judgment against Edmondson was entered on April 15, 1964, and that Lumbermens' application for leave to intervene was not filed until October 7 of that year. Even if, as Lumbermens argues, it had no notice of the suit against Edmondson, Lumbermens admits that Rhodes requested payment of the judgment in a letter dated June 5, 1964. Thus the bonding company, after being apprised by letter of its potential liability under the judgment, delayed more than four months before attempting to intervene. In these circumstances we certainly cannot say that the trial judge abused his discretion in rejecting Lumbermens' application as untimely.
 
 
 8
 Turning next to No. 8562 — Edmondson's appeal from the dismissal of his $100,000,000 "cross-complaint" against Lumbermens — the record indicates that Edmondson's complaint alleged that certain named officials of the State of Nebraska falsely and fraudulently represented to Edmondson that they held a valid commitment for Rhodes to the penitentiary; that Edmondson relied upon such representation and enforced the commitment of Rhodes when in truth the commitment was void; and that because of the fraud practiced upon him by said officials in failing to faithfully perform the duties imposed upon them by law, he has been held up to public scorn and public ignominy, suffered mental pain and anguish, been unable to secure suitable employment, lost large sums of money, and been embarrassed among his friends. The complaint further alleged that the action was maintained as a "class action" against 250 employees of the State of Nebraska and other named officials, and that Lumbermens, as carrier of a faithful performance bond, is capable of representing the class and is bound to pay the judgment.
 
 
 9
 The use of class actions is governed by Rule 23, F.R.C.P., which, at the time Edmondson filed his cross-complaint, provided: "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued * * *." In determining that Edmondson's action was not a class action, the trial judge observed that "the adequacy of the representation by * * [Lumbermens] of individual officials and employees of the state of Nebraska, charged with conspiracy, fraud and collusion falls far short of requirements made necessary by the rule". He reasoned that Lumbermens was not a member of the class alleged to have committed the acts of which Edmondson complained, and, even if it was, the bonding company was not "representative" of the class since its "interests may well be in conflict with interests of the officials and employees of the state of Nebraska". This determination has not been challenged on appeal and we shall not disturb it.
 
 
 10
 It appears to be the law, however, that even though a class action does not meet the requirements of Rule 23, it is not subject to dismissal if it also states a claim for relief against the defendant or defendants named individually. See Barron and Holtzoff, Federal Practice and Procedure, § 571; Montgomery Ward & Co. v. Langer, 8 Cir., 168 F.2d 182. The trial judge then was faced with the additional question whether Edmondson's cross-complaint stated a claim against Lumbermens individually upon which relief could be granted. He held that it did not without explanation.
 
 
 11
 Rhodes suggests that the dismissal was necessarily based upon an erroneous interpretation of Nebraska law to the effect that the obligation of a surety is not original and primary, and it is thus necessary to first sue and secure judgment against the principal or join the principal in the suit as an indispensable party. But it seems more likely to us that the trial judge dismissed the cross-claim because he was unable to conceive how Edmondson could have suffered any actionable wrong for the faithful discharge of his duties as a prison guard even though it required him to guard a prisoner confined under a void commitment. In any event, we are unable to make out a claim for any redressable wrong on the face of the complaint.
 
 
 12
 In appeal No. 9091, Rhodes repetitiously makes thirty-two points of error allegedly committed during the trial of his judgment action against Lumbermens. We have grouped them into the points which we shall treat in order. His initial assertion is that the trial judge erred in failing to grant summary judgment in his favor. He argues that no issues remained for the jury after the trial court rendered a "partial summary judgment" that Rhodes' civil rights were violated when "he was committed as a common felon to the Nebraska Penitentiary to serve a sentence at hard labor when he was guilty of no crime, when he was absent from the presence of the Court that so sentenced him"; that the judgment obtained by Rhodes against Edmondson was "prima facie, a valid enforcible and unsatisfied judgment"; and that the bond issued by Lumbermens covered Edmondson.
 
 
 13
 Sometime prior to trial the court ruled that Lumbermens would be permitted to defend Rhodes' action on two independent theories: (1) that the judgment against Edmondson was obtained as the result of a scheme between Rhodes and Edmondson to defraud Lumbermens, and (2) that as a prison guard, Edmondson was immune from liability unless he was shown to be part of a conspiracy to deprive Rhodes of his civil rights. Manifestly, these defenses raised genuine factual issues making summary disposition inappropriate.
 
 
 14
 Rhodes also objects to the trial judge's refusal to direct a verdict for him after Lumbermens had rested. Lumbermens' evidence showed that prior to instituting the Kansas suit Rhodes filed a complaint in the federal district court of Missouri seeking recovery from Edmondson; that at the same time Edmondson filed an answer admitting all of the allegations in the complaint; that the two parties submitted for the district judge's signature a prepared opinion, ruling, in effect, that Edmondson, while employed as a guard in the Nebraska penitentiary, had violated Rhodes' civil rights; that the trial judge refused to sign the stipulated opinion and at a hearing on the pleadings indicated that he would enter a judgment for Edmondson for non-liability; that thereupon Rhodes and Edmondson stipulated for a dismissal of the Missouri action without prejudice; that a few weeks later Rhodes filed the same suit in the Kansas court and informed the clerk that he understood Edmondson would soon be coming into the office and that summons should be served upon him; that shortly thereafter Edmondson appeared, inquired about employment in the marshal's office, and was served with summons. Further evidence showed that during the pendency of the Missouri action, Rhodes spent many hours and some nights at Edmondson's house in St. Joseph, Missouri dictating; that the two men subsequently spent time together in a rented room in Wathena, Kansas; and that parts of the pleadings of Rhodes and Edmondson in both the Missouri and Kansas action were typed on the same typewriter.
 
 
 15
 A verdict may be directed only if the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party. See Texaco, Inc. v. Pruitt, 10th Cir., 396 F.2d 237; Chicago, Rock Island and Pacific R. R. v. Howell, 10th Cir., 401 F.2d 752. In our view reasonable inferences can be drawn from the submitted evidence sustaining Lumbermens' position that the judgment against Edmondson was procured by a virtue of a scheme between Rhodes and Edmondson. The case was one for the jury.
 
 
 16
 Rhodes next objects to an instruction by the trial judge to the effect that, as a prison guard, Edmondson was immune from liability if he merely kept custody of persons delivered to him in the manner that the rules and regulations of the penitentiary and the directions of superiors required, and did not enter into a conspiracy with one or more other persons for the purpose of depriving Rhodes of equal protection of the laws or of equal privileges and immunities under the laws. As to the conspiracy issue the court instructed the jury on the applicable law, telling them in effect that if they found Edmondson conspired with others to deprive Rhodes of his civil rights, he would not be immune from liability. Rhodes argues that the immunity instruction is in conflict with the Supreme Court's recent decision in Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288.
 
 
 17
 In Pierson, the Supreme Court affirmed the applicability of the common law doctrine of absolute judicial immunity in actions brought under the Civil Rights Act. The Court did not find it necessary to delineate the scope of immunity which should be applied in actions brought under the Act against non-judicial officials, nor has this court. See Franklin v. Meredith, 10th Cir., 386 F.2d 958. And see Coppinger v. Townsend, 10th Cir., 398 F.2d 392.
 
 
 18
 In the few cases in which § 1983 actions have been brought specifically against jailers, guards, or other institutional keepers, the shield of immunity afforded, although not absolute, has been held to be broad and sweeping in its coverage. Francis v. Lyman, 1st Cir., 216 F.2d 583; Hoffman v. Halden, 9th Cir., 268 F.2d 280; Delaney v. Shobe, D.C., 235 F.Supp. 662; Belveal v. Bray, D.C., 253 F.Supp. 606; Black v. Stanley, D.C., 270 F.Supp. 993. Cf. Jobson v. Henne, 2nd Cir., 355 F.2d 129. It has been said that the privilege of the jailer to impose confinement is as time honored in the Anglo-American common law as is the immunity of judges and members of the legislature from civil liability for acts done within the sphere of their judicial activities. Francis v. Lyman, supra 216 F.2d at 588, 589. Indeed, the Ninth Circuit has extended the doctrine of immunity to cases involving alleged malice on the part of the jailer. Hoffman v. Halden, supra. The reasoning behind the broad scope of immunity accorded a prison guard is that he is required by law to keep custody of persons delivered to him for safekeeping, and is normally subject to criminal penalty if he voluntarily allows such a prisoner to escape. See § 28-718, R.R.S.Neb.1943. Certainly a jailer should not be expected to go behind a court order of commitment to determine whether a person presented for safekeeping has been convicted as a result of some denial of his constitutional rights. This is not a case of police brutality as was Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. We conclude that the trial judge was manifestly correct when he instructed the jury that, as a prison guard, Edmondson was immune from liability unless the jury found that he joined in a conspiracy to deprive Rhodes of his civil rights.
 
 
 19
 Rhodes further contends that even though the immunity instruction read on the applicable law, the trial judge denied Rhodes due process by submitting it to the jury because the instruction conflicted with the pre-trial order. The record indicates that when the trial judge proceeded to instruct the jury on immunity at the trial of the case, counsel for Rhodes objected on the ground that the instruction was "in variance with the pretrial order in which * * immunity was ruled out as an issue in this case. It is a total surprise to this plaintiff at this time that immunity is an issue before this jury." Although Rhodes cites no authority for his assertion, he apparently relies on the rule that once triable issues are agreed upon in the pre-trial order, they ought not to be altered or modified except to prevent manifest injustice. See Rule 16, F.R.C. P.; Century Refining Company v. Hall, 10th Cir., 316 F.2d 15; Case v. Abrams, 10th Cir., 352 F.2d 193.
 
 
 20
 At one point during the protracted pre-trial proceedings, the trial judge did rule that as a prison guard Edmondson was not immune from liability to Rhodes and that the defense of immunity was not available to Lumbermens. Later he ruled that: "[Lumbermens] may show by evidence and argument the non-liability of Edmondson for any of the claims made by Rhodes for deprivation of his rights under the Constitution * * *." Obviously the court's first pre-trial ruling was not intended as a final formulation of the triable issues. But even so, there is nothing in the pre-trial rulings, even if they be called "pre-trial orders", to prevent the trial judge from changing his mind about the applicable law of the case. If this were so, pre-trial orders might very well serve the function for perpetuating error rather than facilitating the trial of the lawsuit on the genuine issues of fact and the law of the case.
 
 
 21
 Moreover, Rhodes suffered no prejudice from the instruction since legal immunity turned on admitted status as a prison guard unless Edmondson was part of a conspiracy. As we have seen, the conspiracy issue went to the jury, and no complaint is made of lack of an opportunity to present all relevant facts. Indeed, a careful reading of the record compels us to agree with the trial court that Rhodes was not "misled or deprived of any rights in this Court, so far as the opportunity for proving anything was concerned."
 
 
 22
 Rhodes also objects to the failure of the trial judge to give six requested instructions. Suffice it to say that we have reviewed the requested instructions and agree with the trial judge that they dealt with matters that were either immaterial, no longer in issue, or adequately covered by other instructions.
 
 
 23
 Finally, Rhodes contends that the trial judge erred in permitting Lumbermens to offer in evidence the deposition of Rhodes. He argues that after certain changes were made in the deposition, he failed to sign it as required by Rule 30(e), F.R.C.P.,[3] and to permit parts of the document to be read to the jury denied him due process. Our answer to Rhodes' contention is that he failed to state such an objection at trial and we will not hear it now.
 
 
 24
 One other matter deserves notice. In Rhodes' complaint against Lumbermens, in addition to the suit on the judgment he attempted to assert other grievances, which the trial court considered and dismissed for failure to state a claim upon which relief could be granted. The court apparently was unable to make any legal sense of Rhodes' "Claims for Damages". We have also analyzed the writings and have reached the conclusion that they state no cognizable claim independent of the suit on the default judgment obtained against Edmondson.
 
 
 25
 Affirming the judgment as we do, the questions presented in No. 10,002 are concededly moot.
 
 
 26
 We have also given consideration to the numerous motions filed by Rhodes in which he seeks summary relief in this court on the Edmondson judgment, and moves to strike portions of Lumbermens' brief. It is enough to say that these papers raise no issues or points not covered in our treatment of this litigation. They are severally denied.
 
 
 
 Notes:
 
 
 [1]
 Section 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law * * *." Section 1985 gives a right to sue where "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."
 
 
 [2]
 In 1965 the intervenor, Harry W. Edmondson, died intestate. Rhodes was appointed as administrator of his estate, and was substituted as the intervenor in this proceeding
 
 
 [3]
 Rule 30(e) provides in pertinent part: "Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness * * *."